IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Kenneth Bryant,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    1:14cv294 (CMH/TCB) |
| | )<br>) |
| Marie Vargo, <u>et al.</u>,<br>    Defendants. | )<br>) |

MEMORANDUM OPINION

Kenneth Bryant, a Virginia inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. The matter is presently before the Court on a Motion to Dismiss for Failure to State a Claim by defendants Tera Moore, Shawlawn Hicks-Freeman, and Corizon Health, Inc., which was accompanied by a supporting memorandum. (Dkt. No. 41-42) Also before the Court is defendant Marie Vargo's Motion for Summary Judgment, also with a supporting memorandum and an exhibit. (Dkt. No. 57-58) In both instances, defendants provided plaintiff with the notice required by Local Rule 7(K) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) (Dkt. No. 43, 59), and plaintiff has submitted replies in opposition to both motions. (Dkt. No. 50, 63) Accordingly, the Motion for Summary Judgment and Motion to Dismiss are now ripe for disposition. For the reasons which follow, defendant Vargo's Motion for Summary Judgment will be granted, and summary judgment will be entered in her favor. The remaining defendants' Motion to Dismiss also will be granted, and the claims against them will be dismissed with prejudice for failure to state a claim.

I. Background

The following facts material to the instant motions are undisputed. At the time pertinent

to his claim, plaintiff Kenneth Bryant was confined at Sussex II State Prison ("Sussex II"), where defendant Marie Vargo was the Warden. Vargo Aff. ¶1. Plaintiff alleges, and defendants do not dispute, that plaintiff suffers from a very serious heart condition which was well known and clearly established. He suffers from congestive heart failure and unstable angina, has had multiple heart attacks, has undergone multiple open heart surgeries, and has a defibrillator implant. Compl. at 5. At Sussex II, plaintiff was housed in General Population and was provided with the assistance of a caretaker. Compl., Ex. C.[1] On July 3, 2012, Dr. Tesemma ordered that plaintiff be provided with a wide wheelchair and a handicapped cell at Sussex II on a permanent basis. Compl. Ex. A. On April 17, 2013, plaintiff was seen by Dr. Tesemma, who noted that plaintiff was overweight, wheelchair-bound, and suffered from multiple medical conditions. At the conclusion of his notes, Dr. Tesemma stated, "Candidate for assisted living (Deerfield). Need to change med classif. 'H'." Compl. Ex. D.[2]

Plaintiff filed the instant complaint on February 25, 2014. Compl. at 6. At that time he remained confined at Sussex II, and he alleged that the failure to follow what he characterized as Dr. Tesemma's orders to transfer him to Deerfield amounted to deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The named defendants are Marie Vargo, Warden of Sussex II; Tera Moore, its Medical Administrator; Nurse S. Hicks; and

---

[1] On July 31, 2013, Dr. Tesemma noted on plaintiff's medical log that "he should qualify for a caretaker for his daily living activity." Compl., Ex. B. This recommendation apparently was carried out sometime before November 15, 2013, because on that date Warden Vargo addressed a letter to plaintiff noting in part that at that time he "reside[d] ... with the assistance of a caretaker" in Sussex II's General Population.

[2] The website of the Virginia Department of Corrections notes that Deerfield Correctional Center has a "special population" of "geriatric and assisted living inmates."

Corizon Health, Inc., allegedly the employer of defendants of Moore and Hicks. Plaintiff initially sought an award of monetary damages as well as injunctive relief directing his transfer to Deerfield, but his prayer for injunctive relief was rendered moot when he was transferred to Deerfield on August 7, 2015.[3] Dkt. No. 35. Plaintiff has recently provided notice that as of August 12, 2016, he will be residing at a private address in Alexandria. Dkt. No. 73.

### III. Motion to Dismiss of Moore and Hicks-Freeman[4]

A. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed

---

[3] An issue becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). The mootness inquiry thus focuses on whether the court can grant petitioner the relief he requests. Salgado v. Fed. Bureau of Prisons, 220 Fed. Appx. 256, 257 (5th Cir. 2007). Here, then, once plaintiff received his desired transfer to Deerfield, the issue of his entitlement to such relief was rendered moot. Id. (dismissing appeal of denial of § 2241 petition as moot where petitioner sought reduction in prison term and was released from prison while appeal was pending); see also, Belasco v. Warden, 156 Fed. Appx. 671 (5th Cir. 2005) (holding that issues raised on appeal regarding calculation of good time credits were mooted by petitioner's release from BOP custody).

[4] The Motion to Dismiss also was filed on behalf of originally-named defendant Corizon Health, Inc. In the initial order entered in this matter, Dkt. No. 4, plaintiff's claim against Corizon was dismissed with prejudice for failure to state a claim, because Corizon is not a "person" and so can have no liability under § 1983. Cf. West v. Atkins, 487 U.S. 42 (1988). However, through apparent clerical error, a Notice of Lawsuit and Request for Waiver of Service of Summons subsequently was mistakenly sent to Corizon. Dkt. No. 38. To the extent that plaintiff's claim against Corizon could be interpreted as having thereby been revived, the Motion to Dismiss on behalf of Corizon will be granted for the reasons stated in the initial order.

true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[factual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Significant here, courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

B. Arguments

As to defendant Moore, plaintiff alleges that as the Medical Administrator at Sussex II Moore is "ultimately responsible for the quality of work and care provided by her nursing staff." Compl. at 8. Plaintiff claims that Moore "failed to ensure that Dr. Tessema's orders were met"

with respect to his medical placement, that she gave conflicting responses to [his] requests and grievances," and that she interfered with and ignored Dr. Tessema's orders "by forcing [him] to stay at a facility that is not properly equipped to handle inmate that require assisted living." Compl. at 8-9.

As to Nurse Hicks-Freeman, plaintiff asserts that defendant failed to "properly update [his] medical status" to ensure that defendant Moore was aware of his need for a medical transfer. Compl. at 9. Plaintiff alleges that Hicks-Freeman's failure to give him "a clear and direct answer about [his] medical code" caused him to suffer "stress." Id. When plaintiff had to go to the emergency room on August 23, 2013, Nurse Hicks-Freeman allegedly failed to update his medical code to "let those in charge know" that he needed a medical transfer. Id.

C. Analysis

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual

intent or reckless disregard." Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). To do so, the plaintiff must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

A delay in medical treatment may constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in addition to alleging that the medical need was objectively serious, the plaintiff must also show that the delay in the provision of medical care resulted in an objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Shabazz, 2011 WL 2489661, at *6.

Here, plaintiff's claims against defendants Moore and Hicks-Freeman do not meet this standard. The claims against both defendants are factually premised on the assertion that they failed to implement what plaintiff characterizes as Dr. Tessema's "order" that he be transferred to Deerfield.[5] However, when the exhibits plaintiff attaches to the complaint are considered, as they appropriately may be, see Gulf Ins. Co., 313 F. Supp. 2d. at 596, it becomes apparent that during the period relevant here, no such enforceable "order" existed.

---

[5]Specifically, the "order" to which plaintiff refers is Dr. Tesemma's April 17, 2013 notation that plaintiff was a "[c]andidate for assisted living (Deerfield). Need to change med classif. 'H'."

The exhibits show that on November 15, 2012, Warden Vargo wrote a memorandum to plaintiff concerning correspondence she received from Congressman Robert C. Scott that had been prompted by a letter from plaintiff's brother inquiring why plaintiff remained confined at Sussex II rather than at Deerfield. The warden stated:

> ... On September 8, 2011, your Medical Location Code was changed from 'D' (any facility with 24 hour nursing) to 'F' (any facility without hills, or housing/critical areas without steps or barriers). This medical code change was completed by medical staff at Augusta Correctional Center. You were transferred to Sussex II State Prison due to this location code change on September 30, 2011. Upon arrival at Sussex II State prison, you were assessed by our medical staff and you were deemed appropriate for our General Population, where you reside today with the assistance of a caretaker.
>
> Unfortunately, due to your sentence of Life + 71 years with a Medical Code of 'F,' you are not eligible for assignment to Deerfield Correctional Center because they are a Security Level 2 facility. No documentation can be found where Dr. Tessema ordered that you be transferred to Deerfield. The only way you could qualify for Deerfield with the sentence you are serving is if your Medical Location Code is 'H' (Assisted Living).
>
> Due to these factors and our proximity to MCV, you are being housed appropriately at this time. I trust that this response addresses your concerns.

Compl., Ex. C.

On May 20, 2013, plaintiff signed a grievance stating that in response to a previous informal complaint, Ms. Hicks had said that he was considered a "G" medical code because he was in a wheelchair. However, plaintiff claimed that Nurse Sadler had checked his file and had discovered that Dr. Tesemma "did order that [plaintiff's] medical code be changed to H." On May 20, 2013 Nurse Boone responded, "You are considered a "G." Compl., Ex. 2.

On June 25, 2013, defendant Moore responded to an informal complaint by stating to

plaintiff, "According to the chart your location/assignment code is H. Dr. Tesemma has not changed your code[.] If you thing [sic] that is in error please submit for nurse sick call and so it can be address [sic] with Dr. Tesemma." Compl., Ex. E-1.

A month later, on July 29, 2013, plaintiff addressed an inmate request to defendant Moore, asking if he was on the medical transfer list to Deerfield. On July 31, 2013, Moore responded, "I have checked your chart. Your medical code remains 'H." The doctor wrote in his note candidate assisted living Deerfield." Compl., Ex. E-2.

On August 21, 2013, F. F. Boyd, the Clinical Coordinator of the Virginia Department of Corrections, Office of Health Services, addressed the following letter to plaintiff:

> Mr. Bryant #1001145
>
> On August 12, 2014, you wrote a letter to me regarding the ongoing issues you are having at Sussex II State Prison's Medical Department. You state that Dr. Tesemma has ordered assisted Daily Living on two occasions, one on 7/31/12 and again on 4/17/13. You state that medical administrator will not change the medical location code on the computer to H. You would like help with this.
>
> **Your current location is [a] G location. You do not have a current order in your chart to reclassify to [an] H location facility and I do not have a current request from the Health Authority to change your location code.**

Compl., Ex. F, emphasis added. As noted above, this lawsuit was filed on February 25, 2014. Compl. at 6.

Based upon the foregoing facts, it is apparent that plaintiff cannot satisfy the second element of a deliberate indifference claim against either Moore or Hicks-Freeman. Although plaintiff persists in asserting what defendants have termed the "false notion" that Dr. Tesemma "ordered" that he be transferred to Deerfield, his exhibits demonstrate that no such "order"

existed. Clearly, Moore and Hicks-Freeman were not deliberately indifferent for failing to secure plaintiff's medical transfer where no order that he be transferred had been issued. Cf. Estelle, 429 U.S. at 106. Plaintiff's allegations that Hicks and Moore somehow impeded his transfer by providing conflicting information as to his medical classification do not change that result, because the single event of plaintiff's classification did not constitute a pervasive risk of harm. Treadwell v. Murray, 878 F. Supp. 49, 52 (E. D. Va. 1995). As plaintiff's exhibits belie any suggestion that these defendants were deliberately indifferent to plaintiff's serious medical condition, he has stated no claim against them for which §1983 relief is available.

To the extent that plaintiff's claim might be read to suggest that the delay in securing his medical transfer amounted to deliberate indifference, he still states no claim for violation of his Eighth Amendment rights. As noted above, a delay in providing medical care amounts to a constitutional violation only if it results in some objectively "substantial harm" to the patient. Webb, 281 Fed. App'x. at 166. Here, plaintiff does not allege that his continued incarceration with a caretaker at Sussex II prior to his eventual transfer to Deerfield caused him to suffer harm of any kind. Therefore, the fact that plaintiff's transfer to Deerfield did not happen as promptly as he clearly wished does not support an inference that either Moore or Hicks-Freeman provided constitutionally deficient medical care during plaintiff's incarceration at Sussex II.

In his Response to Defendants' Motion to Dismiss (Dkt. No. 50), plaintiff states that he is "not complaining about any specific medical classification or placement in a particular prison." Rather, he "is complaining about the denial or proper medical treatment that is required after Dr. Tesemma prescribed that plaintiff's medical code be changed to H." However, as discussed above, plaintiff relies on a "false notion" when he supposes that Dr. Tesemma's observation on

April 17, 2013 that plaintiff was a "candidate" for assisted living at Deerfield amounted to an enforceable order that he receive such placement. Indeed, in August, 2013, VDOC's clinical coordinator Mr. Boyd informed plaintiff, "You do not have a current order in your chart to reclassify to [an] H location." Compl., Ex. F. Therefore, to the extent that plaintiff predicates his claim on the assumption that defendants ignored an "order" by Dr. Tesemma to transfer plaintiff to Deerfield, his argument is misplaced. As plaintiff thus fails to state a claim for deliberate indifference against defendants Moore and Hicks-Freemen, their Motion to Dismiss will be granted, and the claims against them will be dismissed with prejudice.[6]

### III. Vargo's Motion for Summary Judgment

A. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita

---

[6] Dismissal with prejudice is appropriate here because the documents attached to the complaint demonstrate that plaintiff has no constitutional claim against either defendant that could be salvaged by amendment of his allegations.

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

    B. Arguments

Defendant Vargo attests that in her position as Warden of Sussex II, she was responsible for the day-to-day operations of the institution, but she had no responsibility or supervision over the actual administration of medical or mental health services provided to the inmates at that facility. Dkt. No. 58, Vargo Aff. ¶4. Instead, trained medical and mental health care professionals are provided to Virginia inmates by VDOC. When an inmate has a medical problem or concern it is the responsibility of the health care providers to evaluate the offender's complaint and to determine any necessary treatment. Vargo Aff. ¶5. During plaintiff's incarceration at Sussex II he had access to such health care services. Id. Vargo is not a medical doctor and so is not qualified to make medical decisions regarding an offender's diagnosis,

treatment or special needs; instead, such determinations "always" rest with qualified medical personnel who are trained to make appropriate decisions in such matters. Vargo Aff. ¶6. Decisions regarding the transfer of inmates for medical reasons are made through VDOC's Office of Health Services rather than through the routine institutional classification process. Id.

Warden Vargo states that she recalls plaintiff, his concern regarding his institutional assignment, and his assertions that medical staff should change his medical location code to allow him to be transferred to Deerfield. However, at the time in question, the Office of Health Services had determined that plaintiff could reside in General Population at Sussex II with the assistance of a caregiver. For that reason, and because Sussex II is located close to the Medical College of Virginia, it was deemed to be an appropriate housing assignment for plaintiff. Vargo Aff. ¶7. As Warden of Sussex II, Vargo relied on the professional judgment of the health care providers, and did not substitute her own judgment for their professional opinions regarding plaintiff's care. Vargo Aff. ¶8. She had no reason to believe that plaintiff's medical needs were not appropriately addressed by health care providers during his tenure at Sussex II, and she was never personally indifferent toward any of his medical needs. Id.

Plaintiff has filed what appears to be a reply to defendant Vargo's summary judgment request.[7] In the reply, which is not signed under penalty of perjury, plaintiff accuses Vargo of

---

[7]Vargo filed her Motion for Summary Judgment and supporting memorandum on December 22, 2015, and provided plaintiff with a Roseboro notice that same day. (Dkt. No. 57-59) On January 14, 2016, plaintiff filed a pleading captioned as "Reply to: Defendants Memorandum in Support of Motion to Dismiss," which was docketed twice. (Dkt. No. 63-64). Because of the timing of this response, and because it is not identical to the plaintiff's earlier reply to the other defendants' Motion to Dismiss (Dkt. No. 50), the Court assumes in deference to plaintiff's pro se status that although captioned as a reply to a Motion to Dismiss, his pleading filed January 14, 2016 was intended as a response to Vargo's Motion for Summary Judgment.

attempting to mislead the Court by characterizing his claim as one of deliberate indifference to his serious medical needs. Instead, what he "actually claims" is that defendants "intentionally failed to apply Dr. Tessema's perscribition [sic] to change his medical location/assignment code to 'H' thereby denying plaintiff medical treatment provided for others." (Dkt. No. 63 at 1) Plaintiff insists that "this is not a matter of [him] wanting a transfer to Deerfield;" rather, he simply wanted Dr. Tessema's medical prescription to be fulfilled. Id. at 2. Plaintiff explains that a VDOC facility with the designation "H" has "special housing set up to treat individual medical needs with 24 hour nursing and certified nurse's assistants, or "caretakers." Plaintiff states that "at no time" during his incarceration at Sussex II did the medical department assign a nurses or a certified nurse's assistant to help with his care, and he points to a VDOC Operating Procedure which prohibits offenders from performing or assisting in the delivery of health care. Id. at 2. Plaintiff concludes that "none of the Defendants have [said] that they did not fail to follow Dr. Tessema's orders or that their actions] were not deliberate indifference ...." Id. at 3.

C. Analysis

At this juncture, it is apparent Warden Vargo is entitled to the summary judgment she seeks. First, plaintiff's claim against her suffers from the same fundamental defect as do his claims against defendants Moore and Hicks-Freeman: namely, that Dr. Tesemma had issued no "order" or "prescription" mandating plaintiff's transfer to Deerfield, and Vargo cannot be said to have shown deliberate indifference by failing to comply with a nonexistent order. Cf. Estelle, 429 U.S. at 106. Second, plaintiff's claim against Warden Vargo is even more attenuated by the uncontested fact that she is not a medical professional and had no responsibility or supervision over the actual administration of medical health services provided to plaintiff. Vargo Aff. ¶4.

In this circuit, "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier, 896 F.2d 848; accord, Boblett v. Angelone, 957 F.Supp. 808, 813 (W.D. Va. 1997). No such circumstances have been shown to have existed here. Lastly, even if it could be shown that a medical professional at Sussex II had provided inadequate medical care to plaintiff, Vargo could have no supervisory liability for such a situation, since plaintiff offers no facts demonstrating that Vargo had actual or constructive knowledge that subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to plaintiff. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Nothing in plaintiff's response to Vargo's Motion for Summary Judgment creates a dispute of material fact such that summary disposition of this matter would be precluded. Anderson, 477 U.S. at 248. Accordingly, defendant Vargo's Motion for Summary Judgment will be granted, and summary judgment will be entered in her favor.

## IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment of defendant Vargo and the Motion to Dismiss of defendants Moore, Hicks-Freeman and Corizon Health, Inc. will be granted. An appropriate Order and Judgment shall issue.

Entered this 17th day of August 2016.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia

14